**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF WEST VIRGINIA**

ENTERED

JAN 1 6 2018

RORY L. PERRY II, CLERK
U.S. District Court
Southern District of West Virginia

IN RE

**OFFICE OF DISCIPLINARY COUNSEL,**

      Petitioner,

v.                                                          Misc. No.:  2:18-mc-00016

**ALFRED JOSEPH MUNOZ,**

      Respondent.

## ATTORNEY REMOVAL ORDER

This Court has been notified by the Supreme Court of Appeals of West Virginia that the license to practice law in the State of West Virginia of **Alfred Joseph Munoz** has been suspended effective by Mandate entered on December 12, 2017, a copy of which is attached hereto and made a part hereof.

**IT IS ORDERED** that the District Court records be amended to reflect the disciplinary action and that **Alfred Joseph Munoz** is barred from appearances in this Court.

The Clerk is further **ORDERED** to remove **Alfred Joseph Munoz** from the list of attorneys admitted to practice in the District Court.

The Clerk is directed to send a certified copy of this order to **Alfred Joseph Munoz** at his last known address of P. O. Box 165, Parkersburg, West Virginia 26102, to each divisional Clerk's Office in this District, and the Attorney Admission Coordinator.

ENTER: 1/16/18

_____
THOMAS E. JOHNSTON, CHIEF JUDGE

STATE OF WEST VIRGINIA

At the Supreme Court of Appeals continued and held at Charleston, Kanawha County, on the 12th day of December, 2017, the following order was made and entered **in vacation:**

Lawyer Disciplinary Board,
Petitioner

RECEIVED

DEC 19 2017

vs)    No. 16-0645

OFFICE OF
DISCIPLINARY COUNSEL

Alfred Joseph Munoz,
Respondent

## MANDATE

Pursuant to Rule 26 of the Rules of Appellate Procedure, the opinion previously issued in the above-captioned case is now final and is hereby certified to the Lawyer Disciplinary Board and to the parties.  The respondent's license to practice law in the State of West Virginia is hereby suspended for three months.  Respondent shall comply with the mandates of Rule 3.28 of the Rules of Lawyer Disciplinary Procedure consequent to his suspension, complete an additional six hours of continuing legal education during the current reporting period, including three hours in the area of ethics and office management and three hours in the representation of clients in petitions for writ of habeas corpus, pay all costs for the trust account reviews, and is hereby ordered to reimburse the Office of Disciplinary Counsel for the costs of this action in the amount of $2,230.48.  Respondent is subject to automatic reinstatement following suspension if all conditions are met.  The Clerk is directed to remove this action from the docket of this Court.

A True Copy

Attest: //s// Edythe Nash Gaiser
Clerk of Court



RECEIVED
NOV 15 2017

IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2017 Term

OFFICE OF
DISCIPLINARY COUNSEL
**FILED**
**November 9, 2017**
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 16-0645

LAWYER DISCIPLINARY BOARD,
Petitioner

v.

ALFRED JOSEPH MUNOZ,
Respondent

---

Disciplinary Proceeding

SANCTIONS IMPOSED

---

Submitted: October 3, 2017
Filed: November 9, 2017

Jessica H. Donahue Rhodes, Esq.
Lawyer Disciplinary Counsel
Office of Disciplinary Counsel
Charleston, West Virginia
Counsel for the Petitioner

Harry G. Deitzler, Esq.
Hill, Peterson, Carper, Bee & Deitzler, PLLC
Charleston, West Virginia
Counsel for the Respondent

JUSTICE WORKMAN delivered the Opinion of the Court.
CHIEF JUSTICE LOUGHRY dissents and reserves the right to file a dissenting opinion.

SYLLABUS BY THE COURT

1.    "A *de novo* standard applies to a review of the adjudicatory record made before the [Lawyer Disciplinary Board] as to questions of law, questions of application of the law to the facts, and questions of appropriate sanctions; this Court gives respectful consideration to the [Board's] recommendations while ultimately exercising its own independent judgment.  On the other hand, substantial deference is given to the [Board's] findings of fact, unless such findings are not supported by reliable, probative, and substantial evidence on the whole record."  Syl. Pt. 3, *Comm. on Legal Ethics v. McCorkle*, 192 W.Va. 286, 452 S.E.2d 377 (1994).

2.    "This Court is the final arbiter of legal ethics problems and must make the ultimate decisions about public reprimands, suspensions or annulments of attorneys' licenses to practice law."  Syl. Pt. 3, *Comm. on Legal Ethics of the W. Va. State Bar v. Blair*, 174 W.Va. 494, 327 S.E.2d 671 (1984).

3.    """In deciding on the appropriate disciplinary action for ethical violations, this Court must consider not only what steps would appropriately punish the respondent attorney, but also whether the discipline imposed is adequate to serve as an effective deterrent to other members of the Bar and at the same time restore public confidence in the

i

ethical standards of the legal profession." Syllabus Point 3, *Committee on Legal Ethics v. Walker*, 178 W.Va. 150, 358 S.E.2d 234 (1987).' Syl. Pt. 5, *Committee on Legal Ethics v. Roark*, 181 W.Va. 260, 382 S.E.2d 313 (1989)." Syl. Pt. 7, *Office of Lawyer Disciplinary Counsel v. Jordan*, 204 W.Va. 495, 513 S.E.2d 722 (1998).

  4. "Rule 3.16 of the West Virginia Rules of Lawyer Disciplinary Procedure enumerates factors to be considered in imposing sanctions and provides as follows: 'In imposing a sanction after a finding of lawyer misconduct, unless otherwise provided in these rules, the Court [West Virginia Supreme Court of Appeals] or Board [Lawyer Disciplinary Board] shall consider the following factors: (1) whether the lawyer has violated a duty owed to a client, to the public, to the legal system, or to the profession; (2) whether the lawyer acted intentionally, knowingly, or negligently; (3) the amount of the actual or potential injury caused by the lawyer's misconduct; and (4) the existence of any aggravating or mitigating factors.'" Syl. Pt. 4, *Office of Lawyer Disciplinary Counsel v. Jordan*, 204 W.Va. 495, 513 S.E.2d 722 (1998).

  5. "Mitigating factors in a lawyer disciplinary proceeding are any considerations or factors that may justify a reduction in the degree of discipline to be imposed." Syl. Pt. 2, *Lawyer Disciplinary Bd. v. Scott*, 213 W.Va. 209, 579 S.E.2d 550 (2003).

6. "Mitigating factors which may be considered in determining the appropriate sanction to be imposed against a lawyer for violating the Rules of Professional Conduct include: (1) absence of a prior disciplinary record; (2) absence of a dishonest or selfish motive; (3) personal or emotional problems; (4) timely good faith effort to make restitution or to rectify consequences of misconduct; (5) full and free disclosure to disciplinary board or cooperative attitude toward proceedings; (6) inexperience in the practice of law; (7) character or reputation; (8) physical or mental disability or impairment; (9) delay in disciplinary proceedings; (10) interim rehabilitation; (11) imposition of other penalties or sanctions; (12) remorse; and (13) remoteness of prior offenses."   Syl. Pt. 3, *Lawyer Disciplinary Bd. v. Scott*, 213 W.Va. 209, 579 S.E.2d 550 (2003).

7. "Aggravating factors in a lawyer disciplinary proceeding are any considerations or factors that may justify an increase in the degree of discipline to be imposed."  Syl. Pt. 4, *Lawyer Disciplinary Bd. v. Scott*, 213 W.Va. 209, 579 S.E.2d 550 (2003).

Workman, Justice:

The Hearing Panel Subcommittee (hereinafter "HPS") of the West Virginia Lawyer Disciplinary Board (hereinafter "LDB") recommends sanctions for attorney Alfred Joseph Munoz[1] for violations allegedly committed in separate events:  (1) his personal behavior, allegedly lying to a magistrate about whether he had orally requested continuances in a criminal DUI case against him; and (2) his professional misconduct, including delays and failure to communicate with clients, while working as an attorney in habeas corpus proceedings.

The HPS recommends the following sanctions:  suspension of law license for one year; compliance with the mandates of Rule 3.28 of the Rules of Lawyer Disciplinary Procedure consequent to his suspension;[2] requirement to petition for reinstatement of law license; completion of an additional six hours of continuing legal education during the current reporting period, including three hours in the area of ethics and office management and three hours in the representation of clients in petitions for writ of habeas corpus; one year

---

[1]Mr. Munoz was admitted to the West Virginia State Bar in 2006 and practices law in Parkersburg, West Virginia.

[2]Rule 3.28 requires suspended attorneys to inform clients of the suspension and file an affidavit with this Court.

of supervised practice subsequent to reinstatement; and payment of costs of these proceedings.

Mr. Munoz objects to the HPS recommendations and argues that sufficient sanctions would include suspension from the practice of law for one month; compliance with Rule 3.28 of the Rules of Lawyer Disciplinary Procedure regrading the duties of a suspended lawyer; automatic reinstatement following the suspension;[3] an additional six hours of continuing legal education with three hours of instruction on the representation of habeas corpus cases and three hours of ethics; fifty hours of community service in his local community; prohibition from acceptance of court-appointed habeas corpus cases for one year; and the payment of costs of the proceeding.

Subsequent to review of the record submitted, the parties' arguments, and applicable legal precedent, this Court finds clear and convincing evidence to support the factual findings of the HPS but finds its sanction recommendations overly punitive. Thus, we impose the following sanctions: suspension of law license for three months; compliance with the mandates of Rule 3.28 of the Rules of Lawyer Disciplinary Procedure consequent to his suspension; automatic reinstatement following the suspension; completion of an

---

[3]Rule 3.31 of the Rules of Lawyer Disciplinary Procedure permits a process of automatic reinstatement if an attorney is suspended for a period of three months or less.

additional six hours of continuing legal education during the current reporting period, including three hours in the area of ethics and office management and three hours in the representation of clients in petitions for writ of habeas corpus; and payment of costs of these proceedings.

## I. Factual and Procedural History

### A. DUI Charges and Proceedings

Mr. Munoz was charged with Driving Under the Influence [hereinafter "DUI"] in Doddridge County, West Virginia, on September 22, 2012, and the case was assigned to Magistrate Jamie Moran. Mr. Munoz filed a speedy trial by jury demand on October 12, 2012. Magistrate Moran continued the matter on November 8, 2012, February 13, 2013, and May 9, 2013, allegedly based upon oral requests for continuances made by Mr. Munoz. During a June 21, 2013, hearing, Mr. Munoz moved to dismiss the charge based upon the absence of a jury and witnesses for the State. The prosecuting attorney explained that Mr. Munoz had informed her and Magistrate Moran that he was going to enter a plea; thus, a jury had not been called for that hearing date. Mr. Munoz informed the magistrate that the matter had *not* been continued at his request and thereby convinced the magistrate to dismiss the original DUI charge based upon failure to prosecute in a timely fashion.

On August 30, 2013, the DUI charge was reissued, in addition to two counts of driving on a suspended license.  The case was assigned to Magistrate Adams.  On February 7, 2014, Mr. Munoz moved to dismiss the reissued charge.  Magistrate Adams held a hearing on February 18, 2014.  Mr. Munoz argued that he should have been tried within one year of the September 22, 2012, incident and that there was no overt act by Mr. Munoz to delay the trial.  Magistrate Moran testified that Mr. Munoz requested the continuances, and his motion to dismiss was ultimately denied.  By order dated January 22, 2015, the Circuit Court of Doddridge County denied Mr. Munoz's petition to prohibit the magistrate court from proceeding against him on a reissued charge of DUI.  Mr. Munoz appealed, and this Court, in a memorandum decision, *Munoz v. Adams*, No. 15-0140, 2015 WL 7628822 (W. Va. Nov. 23, 2015), affirmed the denial and held that the DUI charge against Mr. Munoz could be re-filed because the magistrate testified that Mr. Munoz had been granted multiple continuances, by his *own* request.  Mr. Munoz claimed the *written* record was silent as to whether he requested any continuances.  The magistrate, however, testified that she allowed him to *orally* move for continuances because she thought he could be trusted as an officer of the court.  This Court held that "[t]he record in this matter is clear that petitioner [Mr. Munoz] moved for, and received, at least three continuances in the proceedings below." *Munoz*, 2015 WL 7628822 at *2.

4

The ODC initiated a disciplinary action based upon Mr. Munoz's conduct in the magistrate court proceeding. The HPS ultimately found that Mr. Munoz displayed a marked lack of candor with the magistrate during the June 21, 2013, hearing in which Mr. Munoz incorrectly stated that the matter had *not* been continued at his request and convinced the magistrate to dismiss the DUI charge. The HPS found that Mr. Munoz violated Rules 8.1(a), 8.4(c), and 8.4(d) of the West Virginia Rules of Professional Conduct, based upon his false statement regarding the requests for continuances and his denial that he said he planned to enter a plea. The HPS further found a violation of Rule 3.3 for his false statements regarding requests for continuance. A violation of Rule 8.1(b) was also found, based upon his failure to respond to ODC inquiries.[4]

---

[4]This Court approved amendments to the West Virginia Rules of Professional Conduct, effective January 1, 2015. Mr. Munoz's conduct related to his DUI criminal case occurred both before and after the amendments; the minor modifications to the rules do not affect this case. Rules 8.4(c) and 8.4(d) provide that it is professional misconduct for a lawyer to "(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation; (d) engage in conduct that is prejudicial to the administration of justice. . . ."

Rule 3.3(a)(1) provides that a "lawyer shall not knowingly: (1) make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer. . . ." Rule 8.1(a) provides that a lawyer, "in connection with a disciplinary matter, shall not:  (a) knowingly make a false statement of material fact. . . ." Rule 8.1(b) prohibits the failure "to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this Rule does not require disclosure of information otherwise protected by Rule 1.6."

B.  Representation of Client Carl Lockhart

In addition to violations relating to Mr. Munoz's own criminal DUI proceedings, the HPS also found violations regarding Mr. Munoz's representation of clients in two separate habeas corpus proceedings.  Complainant Carl Lockhart filed a September 2015 ethics complaint against Mr. Munoz, alleging that Mr. Munoz had not responded to letters in March and May 2015 regarding his court-appointed representation of Mr. Lockhart. By June 2015, Mr. Lockhart filed a motion for appointment of new counsel.[5]  Despite an order directing Mr. Munoz to file a petition for habeas corpus on behalf of Mr. Lockhart, there had been no communication between Mr. Lockhart and Mr. Munoz by September 2015.

Disciplinary Counsel wrote to Mr. Munoz on September 15, 2015, requesting a response to Mr. Lockhart's complaint.  Upon the second request for a response, Mr. Munoz filed a response to the complaint on October 16, 2015, indicating that he was made aware of the appointment on March 13, 2015, obtained the file from Mr. Lockhart's former counsel, began a review,[6] and obtained a scheduling order.

By letter dated December 14, 2015, Disciplinary Counsel asked Mr. Munoz why he had failed to file the petition by July 31, 2015, or, in the alternative, file a motion to

---

[5]New counsel was eventually appointed for Mr. Lockhart on October 5, 2015.

[6]Mr. Munoz also indicated that Mr. Lockhart had requested research into alternate avenues of relief.

6

withdraw prior to the July 31, 2015, deadline for the petition. When Mr. Munoz appeared before the ODC, he admitted that he had "los[t] track of [the] case and that he "should have been more diligent and correspond[ed] with Mr. Lockhart in a more timely manner." The HPS ultimately found that Mr. Munoz failed to act with reasonable diligence in the Lockhart case by not filing a habeas petition and by failing to move to withdraw as counsel in a timely fashion.

The HPS deemed Mr. Munoz's representation of Mr. Lockhart deficient, finding violations of Rule 1.3 and 8.4(d)[7] for failing to file a habeas corpus petition and failing to timely withdraw; Rule 1.4(a)(2), 1.4(a)(3), and 1.4(a)(4) for failing to contact his client following his appointment and communicate with his client generally; Rule 3.2 for failure to take reasonable steps to expedite litigation; Rule 8.1(a) during disciplinary matters by making false statements regarding filing a timely motion to withdraw; and Rule 8.1(b) for failure to respond to ODC's letters.

---

[7]All of the rule violations relating to Mr. Munoz's work for Mr. Lockhart fall under the amended Rules of Professional Conduct. In addition to the rules already quoted, the other rules allegedly violated in the Lockhart matter include Rule 1.3 ("A lawyer shall act with reasonable diligence and promptness in representing a client."); Rules 1.4(a)(2), 1.4(a)(3), and Rule 1.4(a)(4) (requiring a lawyer to "(2) reasonably consult with the client about the means by which the client's objectives are to be accomplished; (3) keep the client reasonably informed about the status of the matter; (4) promptly comply with reasonable requests for information. . . ."); and Rule 3.2 ("A lawyer shall make reasonable efforts to expedite litigation consistent with the interest of the client.").

C.  Representation of Client Jonathan Bourne

The HPS also found violations by Mr. Munoz in connection with his representation of Jonathan S. Bourne.  Mr. Munoz was appointed to represent Mr. Bourne on April 20, 2015.  On September 30, 2015, Mr. Bourne filed a complaint against Mr. Munoz, alleging that he had failed to communicate with him in any manner.  Mr. Munoz had not investigated the matter and had missed deadlines in the scheduling order, resulting in the filing of a motion to dismiss by the Attorney General's Office.  Mr. Munoz ultimately withdrew as counsel for Mr. Bourne.

On September 30, 2015, Disciplinary Counsel wrote to Mr. Munoz and requested a response to the Bourne complaint.  By responsive letter, Mr. Munoz explained that he became aware of his appointment on April 27, 2015, acquired Mr. Bourne's file, and conducted a review.  He filed the motion to withdraw as counsel in July 2015 due to difficulties communicating with the presiding judge.[8]

The HPS concluded that Mr. Munoz's representation of Mr. Bourne was deficient and found a violation of Rules 1.3 and 8.4(d), based upon Mr. Munoz's failure to

---

[8]Specifically, Mr. Munoz contends that after Judge Sweeney's recusal and Judge Stone's appointment on this matter, Mr. Munoz was instructed to continue to submit all pleadings through Judge Sweeney's office.  Copies of pleadings were apparently subsequently submitted to Judge Stone.  Mr. Munoz indicated that he withdrew from the case due to difficulties communicating with Judge Stone.

8

file a habeas corpus petition. The HPS further found a violation of Rules 1.4(a)(2), 1.4(a)(3), and 1.4(a)(4) by Mr. Munoz's failure to communicate with Mr. Bourne after being appointed. Further, the HPS found a violation of Rule 3.2 through Mr. Munoz's failure to expedite litigation. Mr. Munoz's failure to respond to ODC inquiries constituted a violation of Rule 8.1(b). The HPS also found a violation of Rule 8.1(a) based upon Mr. Munoz's false statement to the ODC about submitting motions and scheduling orders in the Bourne case.[9]

### D. The HPS Recommended Sanctions

The HPS found that the aggregation of the client-related misconduct and the misrepresentation of issues surrounding his own DUI criminal case constituted egregious misconduct warranting substantial discipline. It also identified certain aggravating factors, including the receipt of prior admonishments on issues of client communication and diligence.[10] The HPS further noted dishonest and selfish motivation in Mr. Munoz's DUI criminal case, false statements during the disciplinary process, and refusal to acknowledge the misconduct.

---

[9]The rule violations found in the Bourne case are identical to those found in the Lockhart case.

[10]The HPS indicated that nine ethics complaints have been filed against Mr. Munoz since 2008, regarding such issues as lack of diligence, failure to communicate, and failure to expedite litigation.

The HPS found no mitigating factors, specifically noting that Mr. Munoz's ten-year practice of law was neither an aggravating nor a mitigating factor. Moreover, although Mr. Munoz submitted a January 29, 2012, letter[11] from a counselor regarding his alcoholism and domestic difficulties, no testimony was provided from either Mr. Munoz or his treatment provider regarding counseling or treatment issues.

The ODC agrees with the recommendations of the HPS. Mr. Munoz objects to the HPS's recommended disposition of the charges against him, and this matter is now before this Court for final determination of an appropriate resolution.

## II.  Standard of Review

This Court reviews the recommended decisions of the HPS *de novo*, holding as follows in syllabus point three of *Committee on Legal Ethics v. McCorkle*, 192 W.Va. 286, 452 S.E.2d 377 (1994):

> A *de novo* standard applies to a review of the adjudicatory record made before the [Lawyer Disciplinary Board] as to questions of law, questions of application of the law to the facts, and questions of appropriate sanctions; this Court gives respectful consideration to the [Board's] recommendations while ultimately exercising its own independent judgment. On the other hand, substantial deference is given to the [Board's] findings of fact, unless such findings

---

[11]The HPS also emphasizes that the letter was dated eight months prior to Mr. Munoz's arrest for DUI in September 2012.

> are not supported by reliable, probative, and substantial evidence
> on the whole record.

Although this Court affords substantial deference to the Board, this Court ultimately determines appropriate resolutions of lawyer disciplinary proceedings. As we explained in syllabus point three of *Committee on Legal Ethics of the West Virginia State Bar v. Blair*, 174 W.Va. 494, 327 S.E.2d 671 (1984), "[t]his Court is the final arbiter of legal ethics problems and must make the ultimate decisions about public reprimands, suspensions or annulments of attorneys' licenses to practice law." Guided by these standards, we proceed to consider the legal arguments.

### III.  Discussion

Rule 3.7 of the Rules of Lawyer Disciplinary Procedure "requires the Office of Disciplinary Counsel to prove the allegations of the formal charge by clear and convincing evidence." Syl. Pt. 1, in part, *Lawyer Disciplinary Bd. v. McGraw*, 194 W.Va. 788, 461 S.E.2d 850 (1995). This Court's review of the record reveals clear and convincing evidence that Mr. Munoz committed multiple violations through his deficient provision of legal services to Mr. Lockhart and Mr. Bourne. He failed to properly serve as appointed counsel for the purpose of filing habeas corpus petitions for both clients, and he failed to adequately communicate with the clients, causing delay in resolution of their cases. Moreover, he displayed a lack of candor in responding to the inquiries of the ODC.

11

We also find clear and convincing evidence in the record to support the HPS's conclusion that Mr. Munoz committed multiple violations during the handling of his criminal DUI case. As referenced above, this Court addressed Mr. Munoz's behavior in *Munoz* and found the record "clear that petitioner [Mr. Munoz] moved for, and received, at least three continuances in the proceedings below." *Munoz*, 2015 WL 7628822 at *2. The HPS found that he misrepresented the truth regarding his own requests for continuances in order to obtain a dismissal of the charges against him. Although Mr. Munoz attempts to obfuscate the issue by contending that the magistrate's testimony conflicted with the prosecutor's testimony regarding common practices of requiring *written* motions for continuances, we find the discrepancies in the magistrate and prosecutor testimony to be only minimally relevant to the issue of Mr. Munoz's sanctionable conduct.[12]

As this Court has repeatedly emphasized, sanctions in lawyer disciplinary cases must be designed to "serve as a deterrent to other attorneys." *McCorkle*, 192 W. Va. at 291, 452 S.E.2d at 382. As we explained in syllabus point seven of *Office of Lawyer Disciplinary Counsel v. Jordan*, 204 W.Va. 495, 513 S.E.2d 722 (1998):

---

[12]The testimony of the prosecuting attorney and the magistrate differed to the extent of their recitation of common practices regarding the frequency of permitting oral continuances and whether the continuances were jointly requested by Mr. Munoz and the prosecutor or simply requested by Mr. Munoz. Because Mr. Munoz claimed that he neither jointly nor independently requested continuances, we do not find these issues dispositive of this disciplinary matter.

"'In deciding on the appropriate disciplinary action for ethical violations, this Court must consider not only what steps would appropriately punish the respondent attorney, but also whether the discipline imposed is adequate to serve as an effective deterrent to other members of the Bar and at the same time restore public confidence in the ethical standards of the legal profession.' Syllabus Point 3, *Committee on Legal Ethics v. Walker*, 178 W.Va. 150, 358 S.E.2d 234 (1987)." Syl. Pt. 5, *Committee on Legal Ethics v. Roark*, 181 W.Va. 260, 382 S.E.2d 313 (1989).

In syllabus point four of *Jordan*, this Court also held:

Rule 3.16 of the West Virginia Rules of Lawyer Disciplinary Procedure enumerates factors to be considered in imposing sanctions and provides as follows: "In imposing a sanction after a finding of lawyer misconduct, unless otherwise provided in these rules, the Court [West Virginia Supreme Court of Appeals] or Board [Lawyer Disciplinary Board] shall consider the following factors: (1) whether the lawyer has violated a duty owed to a client, to the public, to the legal system, or to the profession; (2) whether the lawyer acted intentionally, knowingly, or negligently; (3) the amount of the actual or potential injury caused by the lawyer's misconduct; and (4) the existence of any aggravating or mitigating factors."

Our review of this matter reveals violation of all the *Jordan* factors by Mr. Munoz. His conduct in the habeas corpus appointed cases violated duties to his clients, and he acted intentionally, knowingly, and negligently in failing to exercise due diligence. Although Mr. Munoz attempts to minimize any client *injury*,[13] the obvious injury to them was

---

[13]In this vein, we note Mr. Munoz's contention that an attorney subsequently representing Mr. Bourne was able to expeditiously resolve the discovery issues and bring the case to a close. While the client apparently was well-served by new counsel, that result does

13

the delay of resolution of their cases and their understandable frustration with the system.

Within the context of his own criminal DUI case, we agree with the factual findings of the

HPS that Mr. Munoz's lack of candor concerning his requests for continuances was an overt

attempt to misinform the court to garner a favorable result.

Regarding the fourth *Jordan* factor, this Court has explained that "[m]itigating

factors in a lawyer disciplinary proceeding are any considerations or factors that may justify

a reduction in the degree of discipline to be imposed." Syl. Pt. 2, *Lawyer Disciplinary Bd.*

*v. Scott*, 213 W.Va. 209, 579 S.E.2d 550 (2003).

> Mitigating factors which may be considered in
> determining the appropriate sanction to be imposed against a
> lawyer for violating the Rules of Professional Conduct include:
> (1) absence of a prior disciplinary record; (2) absence of a
> dishonest or selfish motive; (3) personal or emotional problems;
> (4) timely good faith effort to make restitution or to rectify
> consequences of misconduct; (5) full and free disclosure to
> disciplinary board or cooperative attitude toward proceedings;
> (6) inexperience in the practice of law; (7) character or
> reputation; (8) physical or mental disability or impairment; (9)
> delay in disciplinary proceedings; (10) interim rehabilitation;
> (11) imposition of other penalties or sanctions; (12) remorse;
> and (13) remoteness of prior offenses.

*Id*. at 210, 579 S.E.2d at 551, syl. pt. 3. The HPS did not find any mitigating factors in this

case. We agree with that assessment, despite Mr. Munoz's protestations to the contrary. Mr.

---

not significantly diminish the severity of Mr. Munoz's own conduct.

Munoz was not a particularly inexperienced attorney, and he had several prior disciplinary complaints against him, some of which bear remarkable similarity to the present case.

Mr. Munoz argues that his personal issues and custody arrangement difficulties should be considered mitigating factors. He also touts his good reputation within the community, his election to the West Virginia State Bar Board of Governors, and his expression of remorse over the handling his clients' claims. We are also mindful of Mr. Munoz's argument that his client, Mr. Lockhart, had a history of complaining that attorneys fail to properly represent him.

The HPS also found several aggravating factors in this case. "Aggravating factors in a lawyer disciplinary proceeding are any considerations or factors that may justify an increase in the degree of discipline to be imposed." *Scott*, 213 W.Va. at 210, 579 S.E.2d at 551, syl. pt. 4. The HPS identified such aggravating factors as Mr. Munoz's prior disciplinary offenses; his dishonest or selfish motive in misrepresenting matters related to requesting continuances in his DUI case; his multiple offenses within this matter; his submission of false statements to disciplinary authorities; and his refusal to acknowledge misconduct in his DUI case. The HPS emphasizes that Mr. Munoz was specifically warned about his lack of diligence and failure to communicate on two other instances, also involving habeas corpus client representation. Mr. Munoz disagrees with the findings of the HPS and

15

denies any selfish or dishonest motivation in his DUI criminal case and also denies that he made false statements.

Based upon the record before this Court, including the arguments of the parties related to their differing perceptions of the circumstances surrounding the DUI continuances and the representation of the habeas corpus clients, we find the HPS recommended sanctions overly harsh and punitive. Where this Court has previously imposed a one-year suspension, as suggested by the HPS as a sanction in this case, there were additional aggravating circumstances or sanctionable conduct not present in this case. *See Lawyer Disciplinary Bd. v. Duffy*, 2017 WL 2626435 (W.Va. June 15, 2017) (memorandum decision) (suspending attorney for one year based on failure to file appeal for client, absence of court appearance for two clients for seven hearings, and repeated failures to respond to ODC); *Lawyer Disciplinary Bd. v. Thorn*, 236 W.Va. 681, 783 S.E.2d 321 (2016) (suspending attorney for one year based on failure to communicate with clients or respond to client inquiries, lack of work performance, failure to refund unearned fees, failure to provide accountings, and failure to respond to disciplinary matters, despite mitigating evidence of attorney's depression, absence of disciplinary history, and lack of selfish or dishonest motive); *Lawyer Disciplinary Bd. v. Santa Barbara*, 229 W.Va. 344, 729 S.E.2d 179 (2012) (suspending attorney for one year for allowing statute of limitations to expire, having insufficient funds in client's trust

account, failing to inform clients of case status, failing to perfect jurisdictional notice requirements, despite mitigating evidence of attorney's depression).

       This Court finds the resolution fashioned by this Court will adequately serve to sanction Mr. Munoz and to "restore public confidence in the ethical standards of the legal profession." *See Walker*, 178 W.Va. at 150, 358 S.E.2d at 234, syl. pt. 3, in part. In *Lawyer Disciplinary Bd. v. Sullivan*, 230 W.Va. 460, 740 S.E.2d 55 (2013), for instance, an attorney was suspended for thirty days based upon his failure to assist a client in correcting criminal sentencing order, failure to keep the client properly informed, and failure to respond to the ODC. He also had five prior admonishments. *Id.* at 463, 740 S.E.2d at 58; *see also Lawyer Disciplinary Bd. v. Palmer*, 238 W.Va. 688, 798 S.E.2d 610 (2017) (suspending for thirty days for failing to timely file habeas petition and lack of communication with client); *Lawyer Disciplinary Bd. v. Sturm*, 237 W.Va. 115, 785 S.E.2d 821 (2016) (suspending attorney for ninety days for failure to file habeas petition, failure to communicate, and irregularities in depositing and making a timely refund of retainer); *Lawyer Disciplinary Board v. Conner*, 234 W.Va. 648, 769 S.E.2d 25 (2015) (suspending lawyer ninety days for neglectful behavior, failure to communicate, lack of performance of legal services, improper deposit of retainer fee, failure to appear before Supreme Court of Appeals, and lack of compliance with ODC requests); *Committee on Legal Ethics v. Karl*, 192 W.Va. 23, 449 S.E.2d 277

(1994) (suspending lawyer for ninety days for lack of appropriate diligence and communication with client and disciplinary panel).

By sanctioning Mr. Munoz less harshly than recommended by the HPS, we do not diminish the severity of his conduct in any manner. We find clear and convincing evidence to support the HPS's factual finding that he misrepresented the facts surrounding his requests for continuances in his DUI criminal case, despite his characterization of those matters as simply based upon court confusion, misinformation, or contradictory testimony of the prosecuting attorney and the magistrate. We find his behavior egregious and reprehensible. As succinctly stated in *Astles' Case*, 594 A.2d 167 (N.H. 1991), "[n]o single transgression reflects more negatively on the legal profession than a lie." *Id.* at 170. The honor of practicing law "does not come without the concomitant responsibilities of truth, candor and honesty. . . . [I]t can be said that the presence of these virtues in members of the bar comprises a large portion of the fulcrum upon which the scales of justice rest." *Jones' Case*, 628 A.2d 254, 259 (N.H. 1993) (quotation omitted). "Respect for our profession is diminished with every deceitful act of a lawyer." *Disciplinary Counsel v. Fowerbaugh*, 658 N.E.2d 237, 239 (Ohio 1995).

IV. Conclusion

For the foregoing reasons, we impose the following sanctions: suspension of Mr. Munoz's law license for three months; compliance with the mandates of Rule 3.28 of the Rules of Lawyer Disciplinary Procedure consequent to his suspension; automatic reinstatement following the suspension; completion of an additional six hours of continuing legal education during the current reporting period, including three hours in the area of ethics and office management and three hours in the representation of clients in petitions for writ of habeas corpus; and payment of costs of these proceedings.

Sanctions Ordered.

RECEIVED

FILED
November 9, 2017
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

Lawyer Disciplinary Board v. Munoz, 16-0645

NOV 15 2017

LOUGHRY, Chief Justice, dissenting:

OFFICE OF
DISCIPLINARY COUNSEL

       The majority correctly concludes that the respondent committed all of the professional misconduct specified in the Statement of Charges, including lying to a magistrate in his DUI case and dilatory behavior with regard to two clients in habeas corpus proceedings.  Yet, when choosing what sanction to impose, the majority overlooks the most egregious aspect of this lawyer disciplinary case: the respondent's *pattern* of untruthfulness.  Time and time again, upon being confronted with his own problematic behavior, the respondent provided half-truths or outright lies.  He lied in his DUI case, and he lied to the Office of Disciplinary Counsel.  After considering the entirety of the respondent's conduct, it is clear that the Court should have imposed the sanction recommended by the Hearing Panel Subcommittee–including a one-year suspension from the practice of law from which the respondent would be required to petition for reinstatement.[1]  Because the ninety-day suspension imposed by the majority is woefully insufficient, I must dissent.

       The evidence before the Court demands a harsher penalty.  The respondent was court-appointed to represent Carl Lockhart in a petition for habeas corpus in circuit court.  Although he submitted a scheduling order that was entered by the court, the respondent failed

---

[1]*See* R. Lawyer Disc. Pro. 3.32 (requiring lawyer suspended for more than three months to petition Court for reinstatement).

1

to comply with the deadlines established by that order and failed to file an amended habeas petition. Additionally, he ignored letters from his client and failed to respond to many of the disciplinary counsel's attempts to obtain information about the habeas case. Critically, when questioned about his lack of diligence in the *Lockhart* case, the respondent falsely told disciplinary counsel that he had timely submitted a prepared order allowing him to withdraw. He later admitted, however, that he had not submitted this order until one month after the ethics complaint was filed against him.

Similar misconduct occurred in the respondent's representation of Jonathan Bourne, another court-appointed representation in a state habeas case. The subcommittee found that the respondent submitted a scheduling order that was entered by the court, but, as in the Lockhart case, he failed to meet the deadlines specified therein. The respondent falsely told disciplinary counsel that he had performed work on Mr. Bourne's case, including submitting "several motions and scheduling orders" to the circuit court. Despite the disciplinary counsel's request for information about the alleged "several motions and scheduling orders," the respondent failed to timely respond. Finally, the respondent told disciplinary counsel that he could not provide proof because he had submitted documents to the circuit court via facsimile without retaining the facsimile cover sheets. However, the circuit clerk's docket sheet reflects that the respondent filed just two documents in the *Bourne* habeas case: the proposed scheduling order and a motion to withdraw as counsel.

2

The respondent's dishonesty extended to the misdemeanor criminal DUI matter in which he personally was the defendant in the Magistrate Court of Doddridge County. The evidence proves that on three occasions, Magistrate Moran continued hearings upon the respondent's verbal motions, although no written record was made of these requests. On the date set for trial, the magistrate dismissed the charges without prejudice because, believing the respondent was going to plead guilty, no arrangements had been made to bring in a jury. When the prosecutor subsequently re-filed the charges and the case was assigned to Magistrate Adams, the respondent moved to dismiss, arguing that the charges were time-barred. With no written record to contradict him, the respondent claimed he had never indicated an intention to plead guilty and had never moved for any continuances. Although he asserted that the delay in prosecution could not be attributed to him, both Magistrate Moran and the prosecutor testified that the respondent had made verbal motions for continuances that were granted. The respondent then repeated these misrepresentations in an unsuccessful petition to the Circuit Court of Doddridge County, through which he sought to prohibit the prosecution of re-filed charges. The circuit court found that the respondent had made verbal motions for continuances in magistrate court, which constitute an exception to the rule that criminal charges must go to trial within three terms of court.[2] The respondent also repeated his false statements in an appeal to this Court, where we affirmed the circuit court's denial of the petition for prohibition. *See Munoz v. Adams*, No. 15-0140, 2015 WL

---

[2]*See* W.Va. Code § 62-3-21 (2014).

3

7628822 (W.Va. Nov. 23, 2015) (memorandum decision).

Aggravating on the issue of sanction is the respondent's record of prior ethics infractions.[3] In an Investigative Panel order issued on December 8, 2010, the respondent was "strongly warned" about his violations of the Rules of Professional Conduct requiring diligence and client communication in another habeas case. Similarly, in an order dated January 27, 2011, the Investigative Panel reminded the respondent of his obligation to communicate with his client in yet a different habeas case. In a May 6, 2013, order that jointly decided two more ethics complaints, the Investigative Panel issued a written admonishment to the respondent for his violations of the rules involving diligence, client communication, disobeying an obligation of a tribunal, and conduct prejudicial to the administration of justice. An Investigative Panel admonishment is "aggravating just like any other disciplinary action." *Lawyer Disciplinary Bd. v. Sturm*, 237 W.Va. 115, 128, 785 S.E.2d 821, 834 (2016). Notably, the conduct which troubled the Investigative Panel in these prior matters is the same type of conduct that the respondent committed while representing

---

[3]*See* R. Lawyer Disc. Pro. 3.16 (requiring consideration of aggravating factors when determining what discipline to impose); Syl. Pt. 4, *Office of Lawyer Disciplinary Counsel v. Jordan*, 204 W.Va. 495, 513 S.E.2d 722 (1988) (same); Syl. Pt. 4, *Lawyer Disciplinary Bd. v. Scott*, 213 W.Va. 209, 579 S.E.2d 550 (2003) ("Aggravating factors in a lawyer disciplinary proceeding are any considerations or factors that may justify an increase in the degree of discipline to be imposed."). Furthermore, "[p]rior discipline is an aggravating factor in a pending disciplinary proceeding because it calls into question the fitness of the attorney to continue to practice a profession imbued with a public trust." Syl. Pt. 5, *Comm. on Legal Ethics v. Tatterson*, 177 W.Va. 356, 352 S.E.2d 107 (1986).

Mr. Lockhart and Mr. Bourne.

If this disciplinary case had only involved the respondent's deficient provision of legal services to Mr. Lockhart and Mr. Bourne, without any aspect of dishonesty, then a ninety-day suspension may have been appropriate.[4] Indeed, all of the cases relied upon by the majority to justify its sanction involved lawyers who failed to act diligently in some way and failed to adequately communicate with their clients. None of the cases cited by the majority involved a pattern of serious dishonesty. Obviously, the respondent's conduct goes beyond a lack of diligence and poor client communication skills. He told lies to avoid the consequences of his own behavior, whether it was his failure to diligently represent and communicate with clients or the fact that his own actions contributed to the delay in his DUI prosecution. The respondent violated some of the most serious rules promulgated for the governance of attorney behavior: Rule 3.3 prohibiting a lack of candor toward a tribunal; Rule 8.1(a) prohibiting a lawyer from knowingly making a false statement of material fact

---

[4]For example, in *Sturm*, a lawyer was suspended for ninety days for failing to file a petition for habeas corpus, failing to file an appeal, failing to communicate with clients, and failing to correctly deposit client funds. 237 W.Va. 115, 785 S.E.2d 821. In *Lawyer Disciplinary Board v. Hollandsworth*, this Court issued a ninety-day suspension to a lawyer who was appointed to represent a client in a habeas case but failed to contact the client, even after being ordered to do so. *Hollandsworth*, No. 14-0022 (W.Va. Sept. 18, 2014) (unreported order). This Court imposed a ninety-day suspension in *Lawyer Disciplinary Board v. Conner* because the lawyer failed to perfect appeals, communicate with clients, perform certain legal services or return the fee, and respond to the disciplinary counsel's requests for information and a show cause order. *Conner*, 234 W.Va. 648, 769 S.E.2d 25 (2015).

5

in connection with a disciplinary matter; Rule 8.4(c) prohibiting conduct involving dishonesty, fraud, deceit or misrepresentation; and Rule 8.4(d) prohibiting conduct prejudicial to the administration of justice.

The Court has previously imposed lengthy periods of suspension when lawyers made dishonest statements or committed dishonest acts. For example, the Court imposed a one-year suspension on a lawyer who intentionally removed a narrative section from a doctor's report and then provided the redacted report to an administrative law judge and the pro se opponent. *See Lawyer Disciplinary Bd. v. Smoot*, 228 W.Va. 1, 716 S.E.2d 491 (2010). Because of the length of his suspension, Mr. Smoot was required to petition for reinstatement at the conclusion of his one-year suspension. *Id.*[5] In *Lawyer Disciplinary Board v. Elswick*, we suspended a lawyer's license for two years after she allowed her paralegal to elicit a known false statement from a potential witness, allowed that false statement to be submitted to a court, and engaged in a "pen-pal" relationship with the witness that was adverse to her client's objectives. *Elswick*, 231 W.Va. 684, 749 S.E.2d 577 (2013). In *Lawyer Disciplinary Board v. Haught*, a lawyer failed to properly deposit client funds, lied to disciplinary counsel about how he had handled those funds, and lied to disciplinary counsel about the identity of his clients in a real estate transaction. *Haught*, 233 W.Va. 185, 757 S.E.2d 609 (2014). Among other sanctions, this Court suspended Mr. Haught for one

---

[5]*See supra*, n. 1.

year and required that he undergo two years of supervised practice upon a successful petition for reinstatement. *Id.* In *Lawyer Disciplinary Board v. Busch*, 233 W.Va. 43, 754 S.E.2d 729 (2014), a prosecuting attorney made false representations to a circuit judge and to opposing counsel in two separate criminal cases. After recognizing that ethical violations by a lawyer holding public office are viewed as more egregious, this Court suspended Mr. Busch for three years. *Id*. at 56, 754 S.E.2d at 742.

The majority pays lip service to the serious nature of the respondent's conduct, characterizing his behavior as "egregious and reprehensible"[6] and stating that "[n]o single transgression reflects more negatively on the legal professional than a lie."[7] Despite these emphatic words, the majority proceeds to impose only a short suspension, with automatic reinstatement, plus a few extra hours of continuing legal education. This sanction is wholly inconsistent with the nature of the respondent's violations.

When imposing a sanction in a lawyer disciplinary case, the "Court must consider not only what steps would appropriately punish the respondent attorney, but also whether the discipline imposed is adequate to serve as an effective deterrent to other members of the Bar and at the same time restore public confidence in the ethical standards

---

[6]*See Lawyer Disciplinary Bd. v. Munoz*, No. 16-0645, __ W.Va. __, __ S.E.2d __ (2017), slip. op. at 18.

[7]*See Munoz* at __, __ S.E.2d at __, slip. op. at 18 (citation omitted).

of the legal profession." Syl. Pt. 3, in part, *Comm. on Legal Ethics v. Walker*, 178 W.Va. 150, 358 S.E.2d 234 (1987). The inadequate penalty issued by the majority serves none of these purposes. It does not sufficiently address the respondent's lack of candor, serve to deter other lawyers, or evidence that this Court holds lawyers to high standards of trustworthiness. Moreover, by rejecting the subcommittee's recommendation of supervised practice, the majority's sanction does nothing to assist the respondent in correcting the shortcomings that led to his problems in *Bourne* and *Lockhart*.

The Court should have imposed the sanction recommended by the Hearing Panel Subcommittee and the Office of Disciplinary Counsel: ordering a one-year suspension from the practice of law; requiring the respondent to comply with Rule 3.28 of the Rules of Lawyer Disciplinary Procedure concerning, inter alia, providing client notification and accountings; requiring the respondent to file a petition for reinstatement pursuant to Rule 3.32 of the Rules of Lawyer Disciplinary Procedure; ordering the respondent to complete an additional six hours of continuing legal education; upon a successful petition for reinstatement, ordering the respondent to practice under the supervision of another lawyer for one year in order to improve the quality of his law practice; and ordering payment of costs. This disposition would have been in accord with our prior cases and the purposes underlying attorney discipline. Because the sanction imposed by the majority is deficient, I respectfully dissent.

8